# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DARRELL LYNN MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07-CV-677-WDS |
| ) | |
| ILLINOIS DEPARTMENT OF, ) | |
| TRANSPORTATION ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

**STIEHL, District Judge:**

Before the Court is defendant's Motion for Summary Judgment (Doc. 28), to which plaintiff has filed a response (Doc. 31)[1], and defendant a reply (Doc. 34) and a supplemental reply (Doc. 34)[2]. Defendant seeks summary judgment pursuant to Fed. R. Civ. P. 56(c) on both counts of the Complaint.

## BACKGROUND

Plaintiff, Darrell Lynn Miller, began working for defendant, the Illinois Department of Transportation (IDOT), in August of 2002, as a highway maintainer on a bridge crew in

---

[1] On May 18, 2009, plaintiff sought leave of the Court for an extension of time in which to file a response to defendant's motion for summary judgment (Doc. 30). Plaintiff sought one (1) additional day in which to file his response. Plaintiff noted that defendant did not oppose plaintiff's request and defendant did not file a response to plaintiff's motion. Plaintiff filed his response on the following day, May 19, 2009. The Court **FINDS** that plaintiff's failure to file his response before the deadline set for responses did not prejudice defendant. Accordingly, the Court **GRANTS** plaintiff's motion (Doc. 30) and will consider plaintiff's response (Doc. 31) in ruling on defendant's motion for summary judgment.

[2] Defendant sought leave of the Court to file a supplemental memorandum in support of its motion for summary judgment (Doc. 33), which the Court granted in its Order dated June 17, 2009 (Doc. 35). Defendant filed its supplemental memorandum, which included a request for relief that plaintiff be collaterally estopped from raising his discrimination and retaliation claims, on June 19, 2009 (Doc. 40), to which plaintiff filed a response (Doc. 42). Because the issue litigated before the Illinois Labor Relations Board lacks identity with the issues being litigated in the case *sub judice*, the Court **DENIES** defendant's motion to collaterally estop plaintiff from raising his unlawful discrimination and retaliation claims (Doc. 40).

Dongola, Illinois. From August 2002 to March 2006, plaintiff worked in that capacity and allegedly informed his crew members and superiors that he had a fear of "some heights" and that he "couldn't walk a bridge beam." On March 10, 2006, while working on a bridge supporting Interstate 55 crossing Highway 13 in Marion, Illinois, plaintiff alleges that he was instructed to unhook his lifeline while securing plywood to the underside of the bridge. The following day, on March 11th, plaintiff filed a grievance regarding the March 10th work occurrence.

Despite obtaining a doctor's note from Dr. J. Michael Cerny stating that plaintiff was unable to work at such heights, plaintiff was allegedly instructed to "go over the edges" of a bridge while installing light bulbs on the Highway 60/62 bridge crossing the Mississippi River in Fort Defiance, Illinois on March 23rd. Plaintiff experienced a panic attack, for which he sought and received medical attention. Plaintiff went on sick leave, after which he was placed on administrative leave and ordered to submit to a fitness for duty exam with Dr. Byron Gorton. On April 25th, Dr. Gorton communicated to IDOT that he diagnosed plaintiff with acrophobia (i.e., fear of heights).

On July 7th, plaintiff filed a request for reasonable accommodation with IDOT requesting that he not have to work on bridge beams or other extreme places over 20-25 feet and that he be transferred to the IDOT yard in Anna, Illinois. On January 16, 2007, defendant denied plaintiff's request for reasonable accommodation. From June 23, 2006 to April 30, 2007, plaintiff was placed on nonoccupational disability status. After filing a grievance about whether he was fit to perform highway maintainer duties, plaintiff was ordered back to work in Cairo, Illinois, as a highway maintainer on May 1, 2007.

On May 1st, plaintiff first reported to the Carbondale District Nine IDOT office before

reporting to the Cairo, Illinois yard.  While plaintiff was speaking with Kevin Mills, a woman named Angie Ritter, the District Nine Personnel Manager, walked down the stairs.  Plaintiff allegedly told Mills, "Right there is Arch enemy Number 1.  I have never hit a woman.  Sometimes I would like to knock her teeth out." (Doc. 31).  Shortly thereafter, plaintiff reported to the yard in Cairo, but was sent home and placed on administrative leave at noon.  Plaintiff was charged for his comments about Ritter and because he had allegedly made threats of violence toward personnel working at the Dongola yard.

On June 20, 2007, plaintiff was discharged from his employment with IDOT.  Plaintiff filed a grievance contesting his discharge, after which the parties submitted to arbitration.  At arbitration, plaintiff was not awarded back pay or benefits and was found to have engaged in "conduct unbecoming."  As a result of arbitration, plaintiff returned to work at Cairo, Illinois, on November 19, 2008.

On September 27, 2007, plaintiff filed a complaint in this Court alleging two claims against defendant: (1) unlawful discrimination pursuant to Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.; and (2) unlawful retaliation pursuant to Title I of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq.  Defendant now seeks summary judgment pursuant to Fed. R. Civ. P. 56(c) on both Counts alleged in the complaint.

## **LEGAL STANDARD**

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In

determining whether summary judgment is appropriate, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

To make a prima facie claim of disability discrimination under the ADA, plaintiff must demonstrate that: (1) he is disabled; (2) he is qualified to perform the essential functions of the job, with or without accommodation; and (3) he suffered an adverse employment action because of his disability. *Nese v. Julian Nordic Construction Co.*, 405 F.3d 638, 641 (7th Cir. 2005)(citations omitted).

## ANALYSIS

I.     **COUNT I: Unlawful Discrimination**

*A. Reasonable Accommodation?*

Defendant seeks summary judgment on plaintiff's wrongful discrimination claim (Count I) and argues that the undisputed facts show that plaintiff was unable to perform the essential functions of his job without defendant making *unreasonable* accommodations. Plaintiff alleges that he was able to perform all of the essential functions of his employment position with "only the occasional, minor accommodation needed . . . of having another crew member perform tasks involving work at a height of greater than 25 feet in an unsecured position or environment." (Doc. 2, para. 8).

The Seventh Circuit has consistently held that requiring an employer to provide another person to perform an essential function of the job is an unreasonable accommodation. *Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002)("Peters first requested that someone else do the heaviest lifting for him if he could not handle it, which the district court found unreasonable. We agree and hold that such a request is unreasonable because it required another person to perform an essential function of Peters' job."); *See Hansen v. Henderson*, 233 F.3d 521, 523-24

(7th Cir. 2000) (stating that an employer need not create a new job or provide a helper as an accommodation to a disabled employee); *Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir. 1997)("to accommodate him [the employer] would have to hire someone else to help perform some duties. That clearly was beyond a reasonable accommodation."); *Cochrum v. Old Ben Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996) ("hiring a helper to perform the overhead work would mean the helper would de facto perform [the] job. We cannot agree that [an employee] would be performing the essential functions of his job with a helper.").

Plaintiff attempts to distinguish *Hansen*, *Sieberns*, and *Cochrum* on the grounds that his requested accommodation would not require his employer to hire new employees, as members of his former bridge crew could have performed the essential functions of his position that he could not. *Hansen*, 233 F.3d at 523-24; *Sieberns*, 125 F.3d at 1022; *Cochrum*, 102 F.3d at 912. Plaintiff argues that the Seventh Circuit has drawn a distinction between accommodation requests that require the employer to hire new workers, and those that simply require existing workers to assist the employee seeking accommodation, the latter of which is reasonable.

But the ruling in *Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002), undermines plaintiff's unifying theory. In *Peters*, an operator and laborer working for the City of Mauston sustained work related injuries to his shoulders. *Id.* at 839. A doctor determined that the operator-laborer could not lift over thirty pounds, engage in repetitive shoveling, or use his left hand for overhead work and recommended that he return to work with restrictions excusing him from completing these tasks. *Id.* at 839-40. Plaintiff asked the City to accommodate his disability by having other employees help him complete the heavy lifting that his job required. *Id.* at 841. The City determined that the operator-laborer's requests for accommodation were not reasonable and terminated his employment. *Id.* at 842.

Peters filed suit in the United States District Court for the Western District of Wisconsin, which granted summary judgment in favor of the City, finding that Peters' proposed accommodation–that other employees help him lift heavy objects–was not reasonable. *Id.* at 842. On appeal, the Seventh Circuit affirmed the judgment of the District Court and concluded that Peters' request was "unreasonable because it requires another person to perform the essential function of Peters' job." *Id.* at 845.

Indeed, the clear import of *Peters* is that an accommodation request requiring someone else, whether newly hired or an existing employee, to perform an essential function of a disabled employee's job is not reasonable. *Peters*, 311 F.3d 835, 845-46. The ADA does not require an employer to modify the essential functions of a job to fit the needs of a disabled employee. *Hansen*, 233 F.3d at 524 ("The design of the job is a prerogative of management . . . ."). The ADA requires only that an employer accommodate an employee who is otherwise able to perform the essential functions of a job "as configured by the employer," but not some other conception of the job. *Id.* Plaintiff's request here–that someone else on his bridge crew perform his job functions when his job requires him to work above twenty-five (25) feet–is unreasonable, but only if working at that height is an essential function of plaintiff's job as highway maintainer.   *B. Essential Function?*

Defendant argues that working at a height of greater than twenty-five (25) feet is an essential function of plaintiff's job as a highway maintainer. "In determining whether a particular job function is essential, we are guided by the federal regulations." *Lenker v. Methodist Hospital*, 210 F.3d 792, 796 (7th Cir. 2000); *See* 29 C.F.R. § 1630.2(n)(3).[3]

---

[3] Evidence of whether a particular function is essential includes, but is not limited to: (i) the employer's judgment as to which functions are essential; (ii) written job descriptions prepared before advertising or interviewing applicants for the job; (iii) the amount of time spent on the job performing the function; (iv) the consequences of not requiring the incumbent to perform the function; (v) the terms of a collective bargaining agreement; (vi) the work

Defendant has alleged facts sufficient to establish that working at a height of greater than twenty-five (25) feet is an essential function of plaintiff's job as a highway maintainer. (Doc. 31, Ex. 24, 25).

Plaintiff estimates that he works above twenty-five (25) feet only three percent (3%) of the total time he is working. Plaintiff argues that the relative infrequency with which he must perform job functions at that height makes those duties non-essential. But an essential function need not encompass the majority of an employee's time or even a significant quantity of time to be essential. *Basith v. Cook County*, 241 F.3d 919, 928-29 (7th Cir. 2001)(citing *Miller v. Illinois Dep't. of Corrections*, 107 F.3d 483, 485 (7th Cir. 1997)("If it is reasonable for a farmer to require each of his farmhands to be able to drive a tractor, clean out the stables, bale the hay, and watch the sheep, a farmhand incapable of performing any of these tasks except the lightest one (watching the sheep) is not able to perform the essential duties of his position.")). In *Lenker v. Methodist Hospital*, 210 F.3d 792, 796 (7th Cir. 2000), the Seventh Circuit upheld a jury determination that "lifting" is an essential function of a nurse's job, even if required only two percent (2%) of the time a nurse is at work. Here, plaintiff's bare factual allegation regarding the amount of time he spends working above twenty-five (25) feet is insufficient to create a genuine issue of material fact on the issue of whether working at that height is an essential function of his job as highway maintainer.

Plaintiff also argues that Charles Mazur, a highway maintainer, would not ride in the "snooper bucket," but yet was not terminated. (Doc. 31). Although courts look to see if the

---

experience of past incumbent in the job; and/or (vii) the current work experience of incumbents in similar jobs. *See* 29 C.F.R. sec. 1630.2(n)(3).

employer actually requires all employees in a particular position to perform the allegedly essential functions, courts typically do not second-guess the employer's judgment in describing the essential functions of a job. *Basith v. Cook County*, 241 F.3d 919, 928-929 (7th Cir. 2001)("[P]laintiff must offer sufficient evidence to show the employer's understanding of the essential functions of the job is incorrect . . . .")(citing *DePaoli v. Abbott Labs.*, 140 F.3d 668, 674 (7th Cir. 1998)). That Mazur was not required to ride in the "snooper bucket" as a highway maintainer does not establish a genuine factual dispute on the issue of whether working at heights above twenty-five (25) feet is an essential function of the highway maintainer job. Accordingly, the Court **FINDS** that working at heights above twenty-five (25) is an essential function of plaintiff's job as highway maintainer.

Plaintiff has not alleged facts sufficient to create a genuine issue of material fact on the issue of whether he was able to perform the essential functions of his job as highway maintainer without unreasonable accommodation.[4] Accordingly, the Court **FINDS** that defendant is entitled to summary judgment on Count I of the complaint.

## II.    COUNT II: Unlawful Retaliation

Defendant also seeks summary judgment on plaintiff's retaliation claim (Count II) and argues that plaintiff cannot show that defendant engaged in conduct prohibited by the ADA in terminating plaintiff. Plaintiff contends that defendant exhibited a pattern of hostility, thereby demonstrating that defendant terminated plaintiff for engaging in protected expression.

The ADA anti-retaliation provision provides that:

---

[4] Plaintiff cites *Miller v. Illinois Dep't. of Corrections*, 107 F.3d 483, 485 (7th Cir. 1997), for the proposition that an employee is not necessarily disabled because he or she cannot perform *all* of the duties specified for a particular job classification. While plaintiff's assertion is correct, the touchstone inquiry remains centered on whether the employee requesting the accommodation is able to perform the *essential* functions of the job. *Id.* Simply put, plaintiff has failed to create a genuine issue of material fact on this issue.

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

Plaintiff is proceeding by the direct method of proof in attempting to establish unlawful retaliation, which requires him to show evidence of: "(1) a statutorily protected activity; (2) an adverse action; and (3) a causal connection between the two." *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 788 (7th Cir. 2007)(citing *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006)).[5] Plaintiff has offered proof establishing that he engaged in protected expression, by requesting a reasonable accommodation, and that he suffered an adverse employment action, his termination. Therefore, plaintiff has provided evidence sufficient to withstand summary judgment on the first two elements of his retaliation claim.

To establish a causal link between plaintiff's termination and his protected expression, plaintiff argues that the "resistance and animus shown toward Plaintiff because of his disability and/or perceived disability are related to the resistance and hostility shown toward Plaintiff because he sought accommodation for same." Defendant maintains that plaintiff cannot show that defendant took action in violation of the ADA and, therefore, that defendant retaliated.

The Court notes that neither party has briefed this issue adequately. In *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640 (7th Cir. 2002), the Seventh Circuit discussed "the proper standard for summary judgment when a plaintiff claims that he was retaliated against for

---

[5]The Court notes that plaintiff would likely not succeed on his retaliation claim if he were proceeding under the indirect method of proof to establish retaliation. To demonstrate retaliation under the ADA by the indirect method of proof, plaintiff must show that he: (1) engaged in protected activity; (2) performed his job satisfactorily; and (3) suffered an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009). As the Court's ruling makes clear, plaintiff was not performing his job satisfactorily, as he required another employee to perform the essential functions of his position.

complaining about employment discrimination." *Id.* at 642. The *Stone* Court instructed that a plaintiff proceeding by the direct method of proof is entitled to summary judgment when he or she presents uncontradicted direct evidence that he or she engaged in protected activity and as a result suffered an adverse employment action. *Id.* at 644. Defendant may offer contradicting evidence to bring the matter before the jury, "unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had no retaliatory motive." *Id.* In that case, defendant is entitled to summary judgment "because he has shown that the plaintiff wasn't harmed by retaliation." *Id.*

Even assuming, *arguendo*, that plaintiff has provided direct evidence establishing that he suffered an adverse action "as a result" of engaging in protected expression, defendant has, in turn, offered uncontradicted evidence that it would have taken the adverse employment action against plaintiff even if it did not have a retaliatory motive. *Id.* The uncontroverted evidence in this case shows that plaintiff engaged in "conduct unbecoming" in making violently-worded statements regarding his colleague just shortly before he was terminated. Plaintiff admits that he made those statements. Plaintiff argues, however, that defendant's justification for firing him–that he made violently-worded statements–was just a pretext for discrimination.

But, plaintiff's attempt to avert summary judgment by simply arguing pretext, without pointing to specific facts or circumstances demonstrating pretext, is unavailing. As the Seventh Circuit has clearly stated, "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue." *Stone*, 281 F.3d at 644 (collecting cases). Other than the temporal proximity between his reasonable accommodation request and his termination, plaintiff has not offered evidence of pretext. Although he requested a reasonable

accommodation not long before being terminated, he also made violent remarks regarding his colleague in the intervening period. Defendant terminated plaintiff for making those remarks. Therefore, defendant has established by uncontroverted evidence that it would have terminated plaintiff irrespective of any alleged retaliatory motive. Accordingly, the Court **FINDS** that defendant is entitled to summary judgment on Count II of the complaint.

## CONCLUSION

Upon review of the record, the Court **GRANTS** defendant's motion for summary judgment (Doc. 28) in favor of defendant Illinois Department of Transportation and against plaintiff Darrell Lynn Miller on Counts I and II of the complaint. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:** July 28, 2009.

                                                                      s/ **WILLIAM D. STIEHL**
                                                                              **District Judge**